### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JOHN E. JACKSON, JR.,**

      **Movant,**

**v.**                      **Case No. 3:08-cv-01108**
                                **(Criminal No. 3:05-00184-01)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are the following Motions filed by Movant:

1.      Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 129);

2.      Supplemental Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 133);

3.      Applications to Proceed Without Prepayment of Fees and Costs (Docket Nos. 134 and 156);

4.      Motion to Recuse Robert C. Chambers as Judge (Docket No. 139);

5.      Motion to Substitute Counsel (Docket No. 141);

6.      Motion for Transcripts of Suppression Hearing, Plea Hearing and Sentencing (Docket No. 143); and

7.      Motions for Copy of Fingerprints (Docket Nos. 150 and 152).

This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United

States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth herein, the undersigned unequivocally finds that Movant is not entitled to relief; therefore, he likewise is not entitled to an evidentiary hearing on his Motions to Vacate, Set Aside, or Correct Sentence.  *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).  Further, the undersigned finds that, in view of Movant's failure to state a claim for relief under 28 U.S.C. § 2255, all remaining motions should be denied.  The undersigned respectfully recommends that this case be dismissed, with prejudice, and removed from the docket of the Court.

## I.   **Factual and Procedural Background.**

On September 13, 2005, John E. Jackson, Jr. ("Movant") was indicted on two counts by the Grand Jury sitting in the United States District Court for the Southern District of West Virginia, Huntington Division.[1]  The first count alleged that Movant, aided and abetted by another, knowingly and intentionally distributed a quantity of cocaine base ("crack") on or about November 16, 2004 at or near Huntington.  The second count charged Movant with knowingly and intentionally distributing 5 grams or more of crack on or about November 20, 2004 at or near Huntington in violation of 21 U.S.C. § 841(a)(1).  A warrant was issued, and Movant was arrested on October 19, 2005.[2]  Shortly thereafter, Mr. Herbert Hively, a CJA Panel Attorney, was assigned to represent Movant.[3]

---

[1] See *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court, at Docket No. 1.

[2] *Id.* at Docket Nos. 4 and 22.

[3] *Id.* at Docket No. 15.

On December 6, 2005, the United States filed an Information pursuant to 21 U.S.C. § 851, indicating that Movant had previously been adjudged guilty of possession with intent to distribute cocaine in the United States District Court for the Northern District of Indiana.  The United States asserted in the Information that it intended to rely upon this conviction "in seeking imposition of the enhanced penalties provided by 21 U.S.C. § 841(b)" should Movant be convicted of either of the charges contained in the indictment.[4]  Seven days later, Movant, through his counsel, filed a Motion to Continue the trial date for a brief period of time in order to allow counsel to be adequately prepared for trial.[5]  As a ground in support of the Motion, Movant argued that, if convicted, he would likely be considered a career offender; therefore, the serious consequences of a conviction merited the additional preparation time.  The trial was continued until January 24, 2006.  A copy of the Order continuing trial was forwarded to Movant.[6]  On December 14, 2005, Movant sent a letter to the Honorable Robert C. Chambers, the presiding judge, complaining that his attorney, Mr. Hively, had asked for a continuance against Movant's wishes. (Docket No. 141).

On January 19, 2006, after completing standard discovery, Movant requested a second continuance in order to allow counsel time to file a Motion to Suppress evidence.  Once again, Movant relied upon his potential status as a career offender to stress the importance of a continuance.[7]  A continuance was granted until February

---

[4] *Id.* at Docket No. 23.

[5] *Id.* at Docket No. 25.

[6] *Id.* at Docket No. 26.

[7] *Id.* at Docket No. 34.

22, 2006, and a copy of the Order was forwarded to Movant.[8]  Mr. Hively timely filed pre-trial motions, including a Motion to Suppress evidence obtained during a search of Movant's person conducted on October 20, 2004.[9]  On February 6, 2006, a hearing was held on the Motion to Suppress, and the Motion was denied.[10]  In his Order, the District Judge found that the officers had reasonable suspicion to conduct a *Terry* stop, because Movant matched the description of a burglar given by the victim and was seen coming out of a building one block from the location of the burglary shortly after the alleged crime.  In addition, Movant fled when the officers began to approach him.[11]

On February 8, 2006, a superseding indictment was issued by the Grand Jury sitting in the United States District Court for the Southern District of West Virginia, Charleston Division, charging Movant with two counts.  This superseding indictment was identical to the prior indictment, except that the date contained in the second count was amended to reflect that the alleged distribution of 5 grams or more of crack occurred on October 20, 2004, rather than November 20, 2004.[12]

---

[8] *Id.* at Docket No. 35.

[9] On this date—incorrectly identified as November 20, 2004 in the Indictment—Movant was detained by Huntington police officers who were investigating a burglary.  Movant matched the description of the burglar and was seen exiting a building one block from the scene of the crime.  Officers approached Movant to speak with him, and he ran from them.  The officers chased Movant and apprehended him shortly thereafter.  Movant told officers that his name was Aaron Green, one of Movant's aliases.  When the officers checked, they found two outstanding warrants for the arrest of Aaron Green.  The officers searched Movant and found a digital scale and a baggie containing a substance that was later determined to be 9 grams of crack.  (Docket 142).  The scales and crack were the subject of the Motion to Suppress.

[10] *Id.* at Docket No. 45.

[11] *Id.*

[12] *Id.* at Docket No. 46.

On February 17, 2006, Movant signed a plea agreement in which he agreed to plead guilty to the second count of the superseding indictment charging him with possession of crack with intent to distribute on October 20, 2004.  In return, the United States agreed to dismiss the first count.  Within the plea agreement, the parties acknowledged that Movant was subject to an increased punishment associated with his prior felony drug conviction, including a sentence of imprisonment that ranged from a minimum of 10 years to a maximum of life.[13]  In addition, the agreement stated that the "matter of sentencing is within the sole discretion of the Court" and the United States "made no representations or promises as to a specific sentence."[14]

A Rule 11 plea hearing was held before the District Judge on February 22, 2006.[15]  The District Judge thoroughly reviewed with Movant the elements of the charge to which he agreed to plead guilty, and Movant admitted each of the requisite factual elements.  In addition, the United States offered a witness, Detective Paul Hunter, who testified that 9 grams of crack and a digital scale were found on Movant's person during a search conducted on October 20, 2004, incident to an arrest.  When the District Judge asked Movant if Detective Hunter's recollections were accurate, Movant admitted that the testimony of the detective was substantially correct. The District Judge concluded that a sufficient factual basis existed for the guilty plea.  Accordingly, he proceeded to review with Movant in detail the

---

[13] *Id.*  at Docket No. 57.

[14] *Id.*

[15] All references to the plea hearing can be located at Docket No. 85 in *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court.

constitutional and civil rights Movant would lose or waive by pleading guilty and explicitly discussed the enhanced sentence Movant might face in view of the Information filed by the United States. Movant confirmed his understanding of each of these issues. In addition, he acknowledged that he was "completely satisfied" with his legal representation. Movant did not mention his December letter to the Judge, nor express any reservations about his counsel's advice or assistance. The District Judge advised Movant that a guideline range for his sentence could not be determined until a presentence report was completed and indicated that Movant would have the opportunity to review the report and challenge any alleged errors. Further, the District Judge made it clear that regardless of the plea agreement, the Court retained the discretion to impose a sentence that was more severe than the guidelines mandated and once Movant knowingly and voluntarily pled guilty, he could not withdraw the plea simply because he did not like the sentence imposed by the Court. Finally, the District Judge asked Movant a series of questions to confirm the voluntary nature of the plea, giving Movant ample opportunity to withdraw his plea and proceed to trial. After determining the plea to be voluntary, the Judge accepted the guilty plea and deferred acceptance of the plea agreement until receipt and review of the presentence report.

A presentence report was completed on May 1, 2006. On May 15, 2006, Movant, through his counsel, indicated that he had no objections to the report.[16] The presentence report documented the applicability of the career offender enhancement pursuant to U.S.S.G. § 4B1.1, noting that Movant was at least 18 years old at the time

---

[16] The undersigned reviewed a copy of the presentence report obtained from the U.S. Probation Office.

of the instant controlled substance offense and had at least two prior felony convictions for either a crime of violence or a crime involving a controlled substance. In particular, Movant had been convicted of the felony outlined in the Information, as well as a felony conviction in the St. Joseph Superior Court, South Bend, Indiana for dealing in cocaine.  Movant was also convicted in the same court for being a felon in possession of a handgun. With the statutory enhancement available under 21 U.S.C. § 841(b), Movant faced a sentence of 10 years to life. With the career offender enhancement under the sentencing guidelines, Movant received a total offense level of 34 and a Criminal History Category of VI, resulting in a guideline sentencing range of 262 to 327 months.

On June 5, 2006, the District Judge reconvened for a sentencing hearing on Movant's guilty plea.[17]   At the outset of the hearing, the Judge asked Movant if he had reviewed and discussed the presentence report with his counsel.  Movant acknowledged that he had done so and understood the contents of the report.  The District Judge explained the statutory penalty associated with the conviction and the career offender enhancement.  Mr. Hively argued that the Court should deviate downward from the guidelines and sentence Movant to a range between 137 and 262 months, because such a sentence would more than adequately accomplish the goals of punishment and deterrence.   The District Judge then permitted Movant to comment before imposing sentence.  Movant admitted that he had been incarcerated twice and sold drugs to supply his own addiction.  He talked about having no goals and losing hope.  He added that when his attorney had originally asked for a

---

[17] All references to the sentencing hearing can be located at Docket No. 86 in *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court.

continuance to further prepare for trial, Movant "was mad and upset," but now he thanked his attorney for saving his life and giving him hope. After considering all of the statements and information, the Court sentenced Movant to 262 months, which was the minimum sentence under the guidelines after applying the career offender enhancement.  The District Judge stated that his decision was based, in part, on the facts outlined in the presentence report detailing the events that led up to Movant's indictment. The District Judge indicated his concern that, despite having completed two significant prison sentences in the past and having been caught with drugs in Huntington prior to the events that led to the indictment, Movant continued to distribute controlled substances.

Movant filed an appeal with the Fourth Circuit Court of Appeals, arguing that the sentence imposed by the District Judge was unreasonable, because it included an enhancement under the career offender guideline when the guideline range established by Movant's offense conduct and criminal history was sufficient to satisfy 18 U.S.C. § 3553(a).  Movant did not challenge the validity of his guilty plea.

On March 27, 2007, the Court of Appeals issued an unpublished per curiam opinion affirming the sentence.  *United States of America v. Jackson,* No. 06-4660.[18] The Court of Appeals observed that Movant did not "allege that the district court relied on an improper fact or erred in its determination that Jackson satisfied the criteria for enhancement as a career offender;" and, thus, the sentence was reasonable.  Movant appealed the Circuit Court's decision to the United States Supreme Court, but on October 1, 2007, the Supreme Court refused to hear the

---

[18] Docket No. 120 in *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court.

appeal.  Movant then timely filed this § 2255 action.

## II.  **Movant's Grounds for Vacating, Setting Aside, or Correcting His Sentence.**

Movant identifies three grounds in support of his Motion.  First, he alleges that he had ineffective assistance of counsel.  According to Movant, his counsel failed in his representation in three ways; (1) by providing inaccurate advice regarding the career criminal enhancement; (2) by filing a motion to continue the trial date against Movant's wishes; and (3) by failing to object to inaccuracies in the presentence report and the Motion to Suppress.

Next, Movant contends that the District Judge erred in his ruling on the Motion to Suppress, because the dates of the alleged offenses contained in the indictment were incorrect, causing the Court to make an incorrect assumption.  Specifically, Movant argues that the Court presumed that the arresting officers, who searched Movant and found 9 grams of crack on his person, recognized Movant from an alleged drug sale that occurred four days earlier and, hence, had probable cause for a *Terry* stop.  Movant points out that, in fact, the superseding indictment, which corrected the dates, confirms that the search occurred approximately one month before the alleged drug sale.  Consequently, the officers had no reason to recognize Movant and no probable cause for a *Terry* stop.

Finally, Movant accuses Detective Paul Hunter of providing perjured testimony to the Grand Jury, leading to an unfounded indictment.  Movant adds that paperwork generated by the Federal Drug Task Force and the statements of a confidential informant also contradicted evidence contained in the record.

## III.  **Standard of Review**

The relevant portion of 28 U.S.C. § 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion made pursuant to § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding.  To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the Court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack.  28 U.S.C. § 2255.  "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* 2006 WL 36859 *2 (E.D. Va.).  Because a § 2255 motion seeks to deny, evade, or impeach a judgment entered in another proceeding, claims of error that have previously been rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion.

The availability of a § 2255 motion, however, does not supplant or obviate the need to file a direct appeal.  In fact, the United States Supreme Court has made it clear that the failure to raise a claim on direct appeal may result in a procedural default, barring that claim for purposes of a collateral attack.  The Court explained that "a final judgment commands respect.  For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady,* 456 U.S. 152, 165 (1982).  Alleged errors at the trial court level that were non–constitutional in nature and could have been, but were not,

- 10 -

raised in a direct appeal may not be raised for the first time in a § 2255 motion. *Bousley v. United States,* 523 U.S. 614 (1998).  Likewise, a constitutional error that could have been, but was not, raised in a direct appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error, or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack.  *Unites States v. Mikalajunas,* 186 F.3d 490 (4th Cir. 1999).  To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997), quoting *Murray v. Carrier,* 477 U.S. 478, 494 (1986).  To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him."  *Bousley v. United States, supra* at 621.

Generally, when assessing the validity of a § 2255 motion, the reviewing Court isolates issues that have already been rejected on appeal and dismisses them as procedurally barred.  Next, the Court identifies claims that are procedurally defaulted and—to the extent they raise constitutional issues, for which the movant is unable to show cause and actual prejudice or a miscarriage of justice—summarily disposes of them.   After completing these tasks, the Court can address the substance of the remaining claims.  If the movant is clearly unable to state any claim that entitles him to relief, the Court may deny the Motion without the need for an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## IV.     Effect of Movant's Guilty Plea

A guilty plea can slightly alter the sequence of the Court's evaluation, however, because a voluntary and intelligent guilty plea diminishes the availability of § 2255 claims and renders unnecessary an assessment of their constitutional versus non-constitutional nature. A voluntary and intelligent guilty plea amounts to an admission of the material elements of a crime.  *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  As such, a valid guilty plea constitutes a waiver of all claims relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations.  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Consequently, a collateral challenge in the context of a guilty plea is normally limited to attacking the voluntary or intelligent nature of the plea, such as by proving that the decision to plead guilty was misguided due to the ineffective assistance of counsel. *United States v. Broce,* 488 U.S. 258 (1973).  In that case, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity." *Tollett v. Henderson, supra* at 266. A defendant who alleges ineffective assistance of counsel after entering a guilty plea has a high burden to meet.  *Hill v. Lockhart,* 474 U.S. 52, 53 (1985). Put simply, the movant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington,* 466 U.S. 668, 694 (1984).

Federal Rule of Criminal Procedure 11 governs the validity of guilty pleas. When accepting a guilty plea, the Court must address the defendant personally in open court and inform him of the rights that he is waiving by changing his not guilty

plea to guilty. Fed.R.Crim.P. 11(b). The Court must also inquire as to whether the plea is voluntary. *Id.* In order to be valid, a guilty plea must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). Thus, if the defendant fails to understand his constitutional protections and the charges made against him, the guilty plea is invalid and should not be accepted. *Henderson v. Morgan,* 426 U.S. 637, 645 (1976). Rule 11 also requires the parties to disclose the terms of a plea agreement in open court. Fed.R.Crim.P. 11(c)(2). "The purpose of Rule 11 is not only to detect and reject involuntary and unknowing guilty pleas but also to produce a suitable record of the plea and plea agreement." *United States v. Friedland,* 879 F.Supp. 420, 427 (D.N. J. 1995). Because the Rule 11 hearing provides the best evidence of a criminal defendant's understanding and acceptance of the plea and its consequences, when assessing the voluntary and intelligent nature of a guilty plea on a § 2255 motion, the reviewing Court necessarily allocates substantial weight to the Rule 11 colloquy.

Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216 (4th Cir. 2005). The Fourth Circuit Court of Appeals explained that:

> [A] defendant's solemn declarations in open court. . . carry a strong presumption of verity. . .because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. . . .   Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*U.S. v. Lemaster, supra* at 221-222.

**V.**     <u>**Analysis**</u>

     Based upon the aforestated standards, the undersigned addresses the claims raised in Movant's § 2255 Motion.  Although Movant did not attack the validity of his plea on direct appeal, he suggests in the present action that his plea was not voluntary and intelligent, because he based his decision to enter a guilty plea on incorrect advice provided by his attorney.  In particular, Movant states that his attorney "lied and informed me if I plead guilty to simple possession I could still be charged as a career criminal which is not true." (Docket No. 133 at 4).  He contends that if he had known that the "Simple Possession" and "'Possession with Intent' guidelines were not the exact same as Counsel stated," he would not have pled guilty.[19]  Contrary to Movant's assertions, the Rule 11 colloquy demonstrates that Movant clearly understood the nature of the charges against him, the elements of the crime to which he pled guilty, and the consequences of his guilty plea.  Moreover, Movant fails to demonstrate ineffective assistance of counsel and a resulting prejudice.

    **A.**     **Ineffective Assistance of Counsel**

     Indigent criminal defendants have a constitutional right to effective assistance

---

[19] In his reply to the Response of the United States (Docket No. 149), Movant suggests that he was unaware of the potential for a career criminal enhancement to his sentence.  This argument is implausible on its face, because it directly conflicts with Movant's primary argument that he would not have pled guilty to possession with intent to distribute, except for his discussion with Mr. Hively in which Mr. Hively told him that the career criminal enhancement would apply to a simple possession charge as well as a possession with intent to distribute.  In addition, Movant's assertion that he was not informed of the career criminal enhancement is difficult to believe in view of the Motions to Continue, which specifically referenced the potential of a career criminal enhancement as a basis for granting the continuances. Obviously, Movant cannot have it both ways.  Either no discussion occurred regarding the career criminal enhancement, or that conversation did occur and was the impetus to his guilty plea.  In either scenario, however, Movant is unable to establish prejudice.

of counsel through direct appeal of any judgment rendered against them. *Anders v. California,* 386 U.S. 738 (1967). When a Movant charges ineffective assistance of counsel as a basis for relief under 28 U.S.C. § 2255, the burden is on the Movant to prove that his attorney failed to provide effective assistance. *Strickland v. Washington,* 466 U.S. 668, 689 (1984).  In *Strickland,* the United States Supreme Court adopted a two-pronged test for evaluating whether a defendant received adequate assistance of counsel.  *Id.*  As the Fourth Circuit Court of Appeals indicated in *United States v. Roane,* 378 F.3d 382 (4th Cir. 1994), "[a] defendant asserting an IAC [inadequate assistance of counsel] claim must therefore satisfy both prongs, and a failure of proof on either prong ends the matter."  *United States v. Roane, supra* at 406.

The first prong is competence, which is measured against the standard of reasonably effective assistance. To prove ineffective assistance of counsel, the Movant must first identify the specific acts or omissions of counsel, which were purportedly incompetent, and then demonstrate by a preponderance of the evidence that they fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington, supra* at 687-691. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.* at 687.   Because legal services involve, to a great degree, the exercise of judgment in fluid circumstances, an evaluation of their reasonableness is inherently difficult.  As such, the reviewing Court "must indulge a strong presumption" that the conduct of counsel fell within the wide range of generally accepted professional competence and that the challenged acts or omissions constitute "sound trial strategy."  *Strickland v. Washington, supra* at 689, citing

*Michel v. Louisiana*, 350 U.S. 91 (1955).   The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of the totality of the circumstances. *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977). The Court must be highly deferential when scrutinizing the performance of counsel, because "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington, supra* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Strickland v. Washington, supra* at 689.

The second prong of the test is prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington, supra* at 694, citing *United States v. Morrison*, 449 U.S. 361 (1981). "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.  Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense." *Strickland v. Washington, supra* at 694.  Because the purpose of the Sixth Amendment's guarantee of effective counsel is to insure the integrity of the proceeding, deficiencies in counsel's performance will not amount to ineffective assistance unless the performance undermines the reliability of the proceeding's outcome. The Movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington, supra* at 694; *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). An attorney's mere mistake, ignorance or inadvertence, alone, does not constitute proof of ineffective assistance. *Murray v. Carrier,* 477 U.S. 478 (1986). The Movant must show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. *Strickland v. Washington, supra* at 687-88; *Fitzgerald v. Thompson,* 943 F.2d 463 (4th Cir. 1991), *cert. denied,* 502 U.S. 1112 (1992). As stated *supra,* in the case of a guilty plea, prejudice is the "reasonable probability that, but for counsel's errors, [Movant] would not have pleaded guilty and would have insisted on going to trial." *Tollett v. Henderson, supra* at 59.

Movant's argument that he would not have pled guilty if he had known that simple possession of a controlled substance did not qualify as a "controlled substance" charge for purposes of applying the career offender enhancement is self-serving and so starkly at odds with the record that it is implausible. Movant ignores the fact that a plea for simple possession was not an option available to him. As indicated by the indictment and the superseding indictment, the charges against Movant always contained the element of "intent to distribute." Simple possession was not on the table and, as evidenced by the Information filed pursuant to 21 U.S.C. § 851, was not a likely possibility as the United States made clear its intention to pursue a substantial sentence of imprisonment in this case. Therefore, if any advice

- 17 -

was given by Mr. Hively regarding the effect of a plea to simple possession, that advice was irrelevant to the outcome and, accordingly, was not prejudicial.   The evidence against Movant was substantial.  Not only had he been identified as a person trafficking in drugs by a confidential informant, but he had been found on the street in possession of distribution amounts of crack and a digital scale and admitted to selling crack to supply his own habit.  More importantly, Movant clearly understood the nature of the crime to which he pled guilty and the consequences of that plea.  Although the career criminal enhancement was not specifically raised at the Rule 11 hearing, the District Judge expressly advised Movant that his sentence would be lengthy due to the statutory enhancement.  Movant realized and acknowledged his understanding that the sentence could be as severe as spending the rest of his life in prison.

At his Rule 11 hearing, Movant was questioned thoroughly by the Court to establish that a factual basis existed for accepting Movant's plea, as follows:[20]

> BY THE COURT:  Now, if the Government had to go to trial in the case, the Government would have to prove the following elements against you beyond a reasonable doubt: First, that you knowingly and intentionally possessed 5 grams or more of cocaine base, and two, you knew the substance was a controlled substance, and three you intended to distribute this controlled substance.
>
> Now, cocaine base or crack is a controlled substance.
>
> "To possess" means to exercise authority or control over something. "With intent to distribute" means to have in mind or to plan in some way to deliver or transfer possession or control over something to

---

[20] All references to the plea hearing can be located at Docket No. 85 in *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court.  Docket No. 85 will be hereinafter identified as the "Plea Hearing."

someone else.  An act is done "knowingly" if it's done voluntarily and intentionally and not because of a mistake or accident or some innocent reason.  An act is done "intentionally" if it's done knowing the act is one the law forbids and purposefully intending to violate the law.

Now, Mr. Jackson, considering this explanation, do you believe you're guilty of the charge in Count Two?

A.: Yes.

Q.: Tell me in your own words what you did that makes you guilty of this charge?

A.: On October 20th, I met a guy and purchased 9 grams of crack with the intention to distribute it.

Q.: All right.  So you purchased 9 grams of crack cocaine from someone else?

A.: Yes.

Q.: And you intended to sell the 9 grams yourself to other people?

A.: Yes.

Q.: And you knew this was crack cocaine?

A.: Yes.

(Plea Hearing at 7-8).

After completing this exchange, the District Judge heard evidence from Detective Paul Hunter, who testified regarding the circumstances of Movant's arrest and search.  According to Detective Hunter, Movant was searched after law enforcement officers confirmed the existence of outstanding warrants for the arrest of Aaron Green, an alias used by Movant.  Upon searching Movant's person, the officers recovered a digital scale and a baggie containing a substance later determined to be 9 grams of crack.  Movant then provided the officers with a statement describing his sources of supply and naming persons to whom he sold crack.  At the conclusion of

the testimony, the Court asked Movant:

> Court:  Mr. Jackson, was the officer's testimony substantially correct?
>
> Movant: Yes.

(Plea Hearing at 12).

Based upon these statements, the District Judge found a sufficient factual basis to support the guilty plea.  He then proceeded to explain in detail the potential sentence faced by the defendant, the increased penalties flowing from the Information, and the fact that the Court could impose a sentence that was harsher than the sentencing guidelines suggested.  The District Judge specifically advised Movant that the potential maximum sentence Movant faced under the applicable statutory penalties was life imprisonment rather than 40 years. To each of these matters, Movant verbally acknowledged his understanding, as follows:

> Court:  Understand, Mr. Jackson, that if you admit that you are that person and you have no basis to challenge that prior conviction, then at sentencing this Court will consider the increased penalties as being the penalties provided under the statute for this conviction today.  Do you understand that?
>
> Movant: Yes.
>
> Q.:  All right.  Do you admit or deny that you were the person so convicted?
>
> A.: Yes, I was.
>
> Q.:  All right.  Given that, the Court would find that the defendant has admitted the charge in the Information and as a result by statute the statutory penalties will apply here.  Do you understand that that means that the mandatory minimum sentence would be 10 years' imprisonment instead of just 5?
>
> A.: Yes.
>
> Q.:  It also means that the maximum penalty would be up to life imprisonment, not just up to 40 years.  Do you understand that?

A.:  Yes.

Q.:  All right. All right.  As I've indicated, the Court finds that the defendant is subject to the increased mandatory penalties of 10 to life as a result of this prior conviction.  Do you understand you'll also be subject to an increased term of supervised release of eight years as a result of this?

A.:  Yes.

. . . . . .

Q.:  Have you and your lawyer discussed the sentencing guidelines and how they might apply to your case?

A.:  Yes.

. . . . .

Q.:  Do you understand that although I have to consider the sentencing guidelines, I have authority to impose a sentence that's more severe or less severe than the guidelines would call for?

A.:  Yes.

Q.:  Do you understand that even if you do not like the sentence I impose upon you, you will still be bound by this guilty plea and have no right to withdraw it?

A.:  Yes.

(Plea Hearing at 14-16)

Following a discussion of the possible sentence associated with the guilty plea, the District Judge provided Movant with a comprehensive review of the civil and constitutional rights Movant would lose or waive by pleading guilty.  The Court stated, in relevant part:

Q.:  Now, you do have appeal rights that I want to review with you.  Do you understand you may have the right to appeal your conviction if you believe your guilty plea today was unlawful or involuntary or if there's some other fundamental defect in these proceedings that you haven't waived by pleading guilty?

- 21 -

A.: Yes.

. . . . .

Q.:   Do you understand you have a right to plead not guilty to this charge?

A.: Yes.

Q.: Do you understand that by pleading guilty, you give up your right to a speedy and public trial?

A.: Yes.

Q: Do you understand by pleading guilty, you're giving up your right to force the Government to produce witnesses and evidence against you?

A.: Yes

Q.: Do you understand that you would be presumed innocent until the Government presented enough evidence to convince a judge and a jury beyond a reasonable doubt that you were guilty?

A.: Yes.

Q.:   Do you understand that when you admit guilt, you relieve the Government of the burden of proving your guilt?

A.: Yes.

. . . . .

Q.:   Do you understand you and your lawyer could confront the witnesses and he could cross-examine them to test the truth of what they said?

A.: Yes.

Q.: Do you understand that by pleading guilty, you give up that right?

A.: Yes.

(Plea hearing at 16-18).

Next, the Judge inquired as to the voluntary nature of the plea, and Movant

- 22 -

confirmed that pleading guilty was his own idea. When asked if he had any second

thoughts about entering a guilty plea, Movant indicated that he did not.

> Court: Has anyone forced you or threatened you or intimidated you or talked you into pleading guilty against your will?
>
> Movant: No.
>
> Q.: Are you acting voluntarily and of your own free will in entering this guilty plea?
>
> A.: Yes.
>
> Q.: Is pleading guilty your own idea?
>
> A.: Yes.
>
> Q.: Has anyone promised you something or told you anything different from what we've discussed here in open court today to get you to plead guilty?
>
> A.: No.

(Plea Hearing at 19-20).

The record indisputably documents a comprehensive Rule 11 hearing in which

Movant was fully advised of the potential sentence. Although the career criminal

enhancement was not specifically addressed at that hearing, the length of the

sentence was directly addressed, and the sentence that was ultimately imposed was

well within the range described by the District Judge and to which Movant

acknowledged his understanding. Notably, Movant does not challenge the

applicability of the career offender enhancement to his sentence on the basis that he

does not satisfy the requirements of the guideline. In fact, the Fourth Circuit Court of

Appeals found no error in the application of the career offender provision or in the

length of the sentence imposed by the District Court.

The record also complains that his attorney was ineffective for making a Motion

to Continue the trial date and for not challenging errors in the ruling on the Motion to Suppress and in the presentence report.  Movant does not allege, however, that any of these actions or failures to act affected his decision to plead guilty.  In regard to the Motion to Continue, Movant is unable to demonstrate that his counsel's action fell below an objective standard of practice.  Certainly, the reason for the continuance was to allow counsel additional time to prepare for trial, which was not objectively unreasonable in view of the potential ramifications of a guilty verdict.  Movant also is unable to demonstrate prejudice; particularly, as the case was continued a second time to allow counsel to file Motions to suppress evidence, and Movant did not complain about the second continuance. In any event, at his plea hearing, Movant confirmed his satisfaction with his legal counsel, and at his sentencing hearing,[21] Movant explicitly recanted his earlier complaint about the Motion to Continue, stating:

> THE DEFENDANT:  When I first went to prison, I was 18, just had turned 18, and I knew I was going back to prison after I got out that time because I didn't have no goals.  Then I went to prison a second time, and after that, I knew I had enough.  When I got out of prison, I tried to do right, get married, had a good job making almost 50,000 a year.  And my marriage went to shambles, I lost my job, and I turned back to doing drugs, and I started selling them to supply my habit.
>
> I know I should pay for the crimes that I committed, but even like before when I caught this case, my lawyer came and seen me like a couple of weeks before I was going to trial, and he asked me to continue it.  I told him I didn't want to continue it, I wanted to go to trial, because I had gave up hope.  I said, "If I'm looking at life, then if that's what I get, then that's what I got.  I'll just spend the rest of my life in prison."

---

[21] All references to the sentencing hearing can be located at Docket No. 86 in *United States of America v. John E. Jackson, Jr*, Case No. 3:05-cr-184, filed in this Court.  Docket No. 86 will be referred to as the "Sentencing" herein.

> He went behind my back and asked for a continuance. At first I was mad and upset because I didn't see why he did that, but at this time now I thank him because he saved my life and he helped me see that regardless of what happens today, I do have light at the end of the tunnel where I can change my life around.

(Sentencing at 6-7). In both hearings, Movant was under oath and in open court. Consequently, the Court is entitled to accept Movant's statements as true. *Tollett v. Henderson, supra.*

Movant's arguments that his counsel was ineffective for failing to challenge errors in the ruling on the Motion to Suppress and the presentence report are equally without merit. First, Movant contends that during the argument on the Motion to Suppress, Mr. Hively should have stressed to the District Judge that he was incorrect when he stated that the police officers had reason to stop and search Movant, because they probably recognized him from an earlier drug transaction. Movant emphasizes that the date of the alleged drug transaction was actually after the officers stopped and searched him; accordingly, they could not have used information from that drug transaction as a basis to stop him. While Movant is correct regarding the discrepancy in the dates, he misunderstands the reason for the Court's ruling. The District Judge explained in his Order denying the Motion to Suppress that the officers had reason to stop Movant, because he matched the description of a burglary suspect and fled when approached by officers. Therefore, the alleged drug transaction did not play a role in the *Terry* stop, nor provided the factual basis of the Court's ruling. Movant is hard-pressed to establish grounds to vacate a valid guilty plea on the basis that his counsel did not make every conceivable argument during the pendency of the case. As the Supreme Court stated in *Tollett*:

> The principal value of counsel to the accused in a criminal prosecution

> often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law.

*Tollett v. Henderson, supra* at 267-268.  Counsel is not ineffective for failing to assert a non-meritorious argument.  *See, e.g., Garcia v. United States,* 15 F. Supp. 367, 380 (S.D.N.Y. 1998).

Finally, Movant asserts that there were errors in the presentence report to which his counsel should have objected, because they were relied upon by the District Judge when making his decision to apply the career offender enhancement.   In particular, Movant claims, "The presentence report states that defendant was arrested March 21, 2004 with crack and a large amount of case.  Defendant was never arrested in March 2004 with crack and a large amount of cash.  Counsel should have objected to this and challenged alleged incident. . .Counsel should have objected and challenged alleged sale which occurred on November 16, 2004." Contrary to Movant's assertions, the presentence report does not allege that Movant was arrested on March 21, 2004.   Instead, it states as follows:

> On March 21, 2004, officers with the Huntington, West Virginia Police Department went to 519 West 6th Street, a known "crack" house, and knocked on the door, identifying themselves as the police. . .While officers were speaking with the resident, Danny Porter, the defendant, John Jackson, was observed running into the bathroom.  One of the officers recognized him and knew his name because he had dealt with him before.  Officers attempted to follow Jackson as he jumped out of the bathroom window.  As he was running, he dropped his coat and lost his right shoe.  Officers also found his left shoe with $775 inside.

The report goes on to state the following:

> The only controlled purchase in this case took place on November 16, 2004, when a confidential informant, working for the Federal Drug

Task Force placed a telephone call to Paul Moore in an attempt to purchase cocaine base.  After placing the telephone call, the informant went to the residence of Paul Moore, as instructed.  While waiting at the residence, the informant gave Mr. Moore $150 for the drugs.  He made a telephone call and a short time later a vehicle pulled up in the alley.  According to the informant, who observed the transaction through the window, Mr. Moore went to the passenger side of the vehicle and gave the defendant, John Jackson, $150 in exchange for a quantity of cocaine base.

On March 2, 2005, officers from the Huntington, West Virginia Police Department stopped a 1995 Chevy Cavalier for suspicious behavior. . .As officers were talking with [the driver] and a passenger, who was later identified as John Jackson, they observed that he was acting very nervous. . .Mr. Jackson then consented to a search of his person.  During the search, one of the officers felt some baggies and at the same time the defendant attempted to pull away from the officer.  A short foot pursuit occurred and then the defendant was arrested for possession of a controlled substance. . .The defendant also had $550 in his possession.

When sentencing Movant, the District Judge did consider the presentence report in applying the career offender enhancement, but the specific details of Movant's multiple confrontations with law enforcement were not particularly germane or material to the Court's reasoning.  As the Judge explained, "So, you know, that's what I find troubling about your case.  You had two prior convictions, and then in March '04 you get caught with cash and drugs.  And that wasn't enough to wake you up, make you leave town and go somewhere else.  Instead you stay right here in Huntington and continue dealing with it and got caught this time." (Sentencing at 9).

Movant does not dispute that his prior felony convictions, alone, provided a sound basis for application of the career offender enhancement. Moreover, Movant does not dispute that he had significant amounts of cocaine base and cash in his possession in March 2004 and March 2005; that he fled on both occasions when confronted by police officers; and that in between these two episodes, on October 20, 2004, he was

arrested on two outstanding warrants and was found to have a digital scale and a baggie of 9.0 grams of crack cocaine on his person.   Consequently, regardless of whether the District Judge correctly recalled the date upon which Movant was arrested, the Judge's decision was entirely accurate; Movant embodied the "career offender" for whom the enhancement was intended.

In any event, Movant did not object to any part of the presentence report at the time of the sentencing hearing.   The District Judge specifically asked Movant if he had read the report; discussed it with his attorney; and understood its contents. Movant answered in the affirmative to all of these inquiries.   (Sentencing at 2).   His attorney then argued to the Court that it should deviate from the career offender enhancement and impose a sentence between the guideline based upon the statutory range and the minimum of the range taking into account the career offender enhancement, because Movant had accepted responsibility for his actions and would be successfully deterred with a shorter sentence.   Ultimately, the Court imposed the lowest sentence available after application of the career offender enhancement. Because the Fourth Circuit Court of Appeals expressly concluded that the District Judge was correct in determining the sentence, Movant is precluded from relitigating that issue.   *Boeckenhaupt v. United States, supra* at 1183.   Movant's counsel cannot be found ineffective for failing to successfully challenge a sentence that was properly calculated.

Therefore, based upon the above, the undersigned proposes that the presiding District Judge **FIND** that Movant's counsel provided constitutionally effective representation.   The undersigned further proposes that the presiding District Judge **FIND** that the guilty plea entered by Movant was voluntary and intelligent and, as

such, is valid.

### B.    Alleged Errors by District Judge and Misstatements by Witnesses

Movant argues that the District Judge erred in denying the Motion to Suppress, because he relied upon a incorrect factual premise in reaching his decision. Movant elucidates as follows:

> Your Honor indicated officers had probable cause for a Terry stop, also stating, "considering the fact that I was involved in a sale four days prior before the alleged offense it's more than likely officers already knew who I was." Whereas alleged sale actually happened 27 days after said charges. Therefore it is not more likely officers knew who I was.

(Docket No. 133 at 5). Movant adds:

> The defendant received a Superceeding [sic] Indictment stating that the alleged offense which occurred on November 20, 2004 actually happened October 20, 2004. The alleged sale didn't occur until November 16, 2004. So for the Court to justify officers knowing defendant for probable cause is harmful error. The alleged sale hadn't occurred at the time defendant was stopped on October 20, 2004.

(Docket No. 149 at 8). In addition, Movant contends that the investigating officer, Detective Hunter, misrepresented facts during his Grand Jury testimony. Similarly, Movant suggests that the Federal Drug Task Force and/or a confidential informant provided inaccurate information to the Grand Jury about the alleged November 16, 2004 drug transaction. (Docket No. 7).

Undoubtedly, Movant waived these claims by failing to raise them on direct appeal. Even to the extent that Movant could argue that some of these claims trigger constitutional issues, they have been procedurally defaulted. Movant does not provide any excuse for failing to raise these alleged errors on appeal and certainly can demonstrate neither actual prejudice nor a miscarriage of justice; particularly, in view of Movant's guilty plea. As discussed *supra,* the transcript of the Rule 11 hearing

substantiates that Movant's guilty plea was both voluntary and intelligent.   By entering this plea, Movant admitted to the material elements of the crime charged and waived his right to asserts claims based upon errors that occurred prior to the entry of his guilty plea.   *U.S. v. Lemaster, supra.*  The law is well-settled that the entry of a knowing and intelligent guilty plea acts as a waiver of any motions that must be made before trial, including motions alleging a defect in instituting the prosecution and motions alleging a defect in the indictment, as well as claims for unlawful search and seizure.  *Tollett v. Henderson,* 411 U.S. 258, 267 (1973).   In *Tollett*,  the United States Supreme Court reaffirmed that:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

*Id.* at 267.   Therefore, Movant's guilty plea signified acceptance of the accuracy of testimony offered by the detective and the confidential informant.  *Stroupe v. United States,* 664 F. Supp. 2d 598, 608 (D. S.C. 2009), quoting *Sunal v. Large,* 332 U.S. 174, 180 (1947)(the writ of habeas corpus "is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line.").

Therefore, based upon the above, the undersigned proposes that the presiding District Judge **FIND** that the remaining grounds stated in Movant's § 2255 Motions

are procedurally barred or defaulted and, in any event, were waived by Movant's voluntary and intelligent guilty plea.

### C.    Remaining Motions

In addition to the Motion and Supplemental Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255,[22] Movant filed six separate Motions, or letters construed as Motions, including two Applications to Proceed Without Prepayment of Fees and Costs; two Motions for a Copy of Fingerprints; a Motion for Copies of Transcripts; and a Motion to Recuse Robert C. Chambers.[23]   Because Movant fails to state a plausible claim under 28 U.S.C. § 2255, these ancillary Motions, with the exception of the Motion to Recuse, should be dismissed as either moot or irrelevant.

In regard to the Motion to Recuse, Movant alleges that Judge Chambers should disqualify himself from this civil action on the basis of "judicial misconduct and a clear violation of [Movant's] 14th Amendment." According to Movant, on December 14, 2005, after his attorney sought a continuance of the trial date against Movant's wishes, Movant wrote to Judge Chambers complaining about the Motion to Continue and asking for replacement counsel.  However, "the Court never responded or took legal action against Counsel, but rather submitted [Movant's] letter/motion to Counsel."   (Docket No. 139-1).  Movant contends that this action and inaction prove

---

[22] These Motions are essentially the same.  Movant re-filed the original Motion at the direction of the Court, because he had not signed the Motion the first time.  The re-filed Motion was docketed as a Supplemental Motion.

[23] In addition, a Motion to Substitute Counsel appears to have been erroneously docketed as a pending Motion in this action when it clearly is nothing more than a letter sent by Movant to Judge Chambers in the underlying criminal action.

that Judge Chambers was not fair, neutral, or impartial.

Contrary to Movant's illogical belief, assuming *arguendo* that Judge Chambers received Movant's letter and forwarded it to Mr. Hively, such action would have been absolutely necessary and appropriate before addressing a request for substitution of counsel.  The record is unclear as to whether Judge Chambers actually received the correspondence; however, the record is clear that after the letter was allegedly sent and before entering a guilty plea, Movant advised the Court, while under oath, that he was "completely satisfied" with the representation provided by Mr. Hively.  Moreover, at the time of his sentencing, Movant commended this same counsel and credited him with saving Movant's life. Accordingly, any criticism Movant expressed about his counsel in December 2005 had evaporated by the following February and was explicitly recanted at the Sentencing hearing in June 2006.

A judge is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  "Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial."  *In Re Beard,* 811 F.2d 818, 827 (4th Cir. 1987), citing *Rice v. McKenzie,* 581 F2d 1114, 1116 (4th. Cir. 1978).   Nothing about Movant's Motion to Recuse can be construed as reasonable.  Accordingly, it should be dismissed as frivolous.

Therefore, based upon the above, the undersigned proposes that the presiding District Judge **FIND** that the remaining Motions filed by Movant are moot, irrelevant, or frivolous.  The undersigned further proposes that the presiding District Judge **FIND** that Movant is clearly not entitled to relief under any of his pending

Motions; therefore, an evidentiary hearing is unnecessary.

## VI.   <u>Proposal and Recommendations</u>

For the forgoing, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the proposed findings contained herein and **RECOMMENDS** that**:**

1.   Movant's Motion and Supplemental Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket Nos. 129 and 133) be **DENIED** for failure to state a plausible claim**;**

2.   Movant's Applications to Proceed Without Prepayment of Fees and Costs (Docket Nos. 134 and 156) be **DENIED** as moot**;**

3.   Movant's Motion for Transcripts (Docket No. 143) be **DENIED** as moot**;**

4.   Movant's Motions for Copy of Fingerprints (Docket Nos. 150 and 152) be **DENIED** as irrelevant and moot**;**

5.   Movant's Motion to Substitute Counsel (Docket No. 141) be **DENIED** as irrelevant and moot;

6.   Movant's Motion to Recuse (Docket No. 139) be **DENIED** as frivolous; and

3.   This civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil

Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, the respondent, and any counsel of record.

**FILED:** April 8, 2011.

Cheryl A. Eifert
United States Magistrate Judge